STARK v. MUSKEGON TRACTION & LIGHTING CO.

1. ELECTRICITY — NEGLIGENCE — VIOLATION OF ORDINANCE — HEIGHT OF WIRES.

    Negligence of an electric-light company, in failing to string its wires 25 feet above ground as required by a city ordinance, will not be presumed to have contributed to an injury received by a child in consequence of his throwing a broken telephone wire over a light wire.[1]

2. SAME—PERSONAL INJURY—IGNORANCE OF DANGER.

    The fact that a child was ignorant of the danger of holding a broken telephone wire while another threw its free end over an electric-light wire, does not, of itself, operate to charge the owner of the light wire with responsibility for the resulting injury.

3. SAME—PROXIMATE CAUSE.

    Children playing with a telephone wire broke it, and, on throwing one of the loose ends over an adjacent light wire, a shock was received causing injury. *Held*, that neither the violation of a city ordinance in stringing the light wire less than 25 feet from the ground, nor defects in its insulation was the proximate cause of the injury.

Error to Muskegon; Russell, J. Submitted October 11, 1905. (Docket No. 33.) Decided October 31, 1905.

Case by William Stark, Jr., by next friend, against the Muskegon Traction & Lighting Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

Two errors are assigned upon the record, both of which make the single point that it was error for the court to direct a verdict for defendant. The record contains the substance of all the testimony given upon the trial. The

---

[1] As to liability for injuries by electric wires in highways, see note to *Denver Consolidated Electric Co.* v. *Simpson* (Colo.), 31 L. R. A. 566.

injury complained about was received August 30, 1903. The plaintiff is a lad, 10 years old in April, 1903. Defendant is a Michigan corporation, owning a plant for developing electricity for lighting and other purposes, and at the date in question was operating its plant and wires connected therewith, including a system of wires supported by poles on and over Spring street in the city of Muskegon. The case made by the declaration is, in substance, that the wires of defendant were, at the place of the accident, carried too near the ground, and were not insulated; that on the same poles, and under the defendant's wires, certain telephone wires were carried; that the condition and position of the wires permitted contact, or that contact occurred between the telephone wires and the other and uninsulated wire; and—

" That the injuries complained of were caused by the defective and unsafe construction and maintenance of such wires and the defective and unsafe stringing of the wires of the [defendant] at the place aforesaid, and in permitting and maintaining said wire too near the surface of the ground at the place aforesaid, and in allowing the wires herein designated as telephone wires to be and remain on and connected with the poles on which was strung the wires through which the defendant was transmitting a dangerous electrical current."

It is alleged that plaintiff, without fault on his part, and without any knowledge of the danger, came in contact with the telephone wire which, owing to carelessness and negligence of defendant, was at the time charged with electricity, and was injured. There is no dispute about the facts. No testimony was introduced on the part of defendant. At the pole near which the injury was received, the wires of defendant were supported on arms, two wires each side of the pole and some distance away from the pole. One witness, the father of the plaintiff, testified that they were 19 feet and eight inches, and another that they were 20 feet and 9 inches, above the ground. Two feet below these wires, supported by single brackets with glass insulators, were two telephone wires,

about 3 inches from the pole.   They were not directly un-
der the electric-light wires; one was above the other, and
they were several inches apart.. There is no testimony
showing or tending to show that the defendant's wires or
the telephone wires were not properly and securely placed
and supported, or that they were, in position, dangerous
or likely to become dangerous.   Plaintiff, with other
children, was playing on Sunday afternoon in Spring
street.   One of the boys, playing with a ball and chain,
threw it up to the lower telephone wire, to which it be-
came fastened by reason of the chain winding around the
wire.   A sister of the boy, using a rake, the teeth of
which she hooked into the chain, in her effort to get it
down broke the telephone wire.   A boy took one end of
the broken wire, twisted it about a post, and then carried
the end to a tree, up which he climbed to put it over a
limb of a tree.   The other end of the broken wire was
made a plaything by the children, who, plaintiff aiding,
swung it in the air against the wires of defendant, appar-
ently for the purpose of making and hearing the wires
rattle.

"They would get hold of the end of it and get it back
and form a loop, swing it around in a half-oval shape,
and let go of it and strike the electric-light wire to hear it
rattle.   *   *   *   They would get hold of the end of it and
then leave it somewhat slack, and then swing it round and
round and as they let it go it would fly up and hit the
other wires and rattle.   They were out there engaged in
that play probably half an hour."

In this way they finally threw the telephone wire over
the electric-light wires, or one of them.

"At the time Willie Stark [the plaintiff] threw the wire
up over the electric wire, I had hold of the long piece of
wire.   When Willie Stark threw the short piece of wire
up over the electric-light wire, then I got a shock in the
long piece of wire that I had hold of."

The boy who first felt the current told the others, an-
other boy tried it, and received a shock.   The plaintiff,

141 Mich.—37.

proposing to try the experiment, was asked by his sister and another not to do so. Saying, " Watch me; I am not afraid," he took the wire and received the injuries for causing which he seeks to charge defendant. After the injury, on that day and the next day, persons noticed that in spots or small places there was no covering, no insulation on the electric-light wire over which the telephone wire had been thrown. It is supposed, by at least one witness, that the telephone wire rested finally upon one of the bare or uncovered spots on the electric-light wire, at a point where it was spliced; that the current was carried into the adjoining house from which a telephone had been a short time before removed, leaving the wires supplying the telephone in place with their ends of bare copper twisted together, the current passing out and into the wire described as the long end of the wire which had been carried first to a post and then to a tree and so, when he seized it, to the person of the plaintiff. Counsel for plaintiff offered in evidence an ordinance of the city of Muskegon, approved December 4, 1889, section 2 of which is:

" All such poles and wires shall be put up under the supervision of the chief engineer of the fire department of said city, but no wires shall be put up over the fire alarm telegraph wires, nor shall any wires be put up within twenty-five feet of the ground in any street, alley, or other public ground of said city."

The declaration does not allege disobedience of the ordinance as negligence, but avers the duty to suspend wires at a reasonably safe distance from the ground. It was not more, probably considerably less, than an hour after the time the wire was broken that plaintiff was injured.

*Turner & Turner* and *Cross, Lovelace & Ross*, for appellant.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for appellee.

OSTRANDER, J. (*after stating the facts*).   It is not apparent that the requirement, by ordinance, that wires should be supported 25 feet above the ground was based upon any idea of safety of the public.   Failure to comply with this provision of the ordinance is not the negligence charged.   If it was, it is not to be presumed that it caused or contributed to the injury complained about.   See, also, as to the right of this plaintiff to complain of the violation of the ordinance, *Flanagan* v. *Sanders*, 138 Mich. 253. Whether or not the wires of the defendant were exposed before the telephone wire was broken does not appear, nor does it appear whether it is possible, or, observing proper rules, usual, to prevent some exposure of copper wire of the size and kind, in the making of splices. Whether the substance with which the wires were covered could or probably would be removed by being struck by the telephone wire, as it was swung against it, does not appear. . It is, however, decisive of the case that plaintiff has conclusively shown a condition and relation of things which, as to himself and the public generally, was safe and harmless if not interfered with, has shown neither invitation nor inducement warranting or excusing interference, and has just as conclusively proven an interference, participated in by himself, the character and the results of which were not to be reasonably apprehended or guarded against.   Whether or not, under the circumstances of this case, we apply the term "trespasser" to one of plaintiff's years (*Trudell* v. *Railway Co.*, 126 Mich. 73, [53 L. R. A. 271]; *Henderson* v. *Railway Co.*, 116 Mich. 368), he was certainly a wrong-doer, who but for his acts of wrong-doing would not have been injured.   Indulging the presumption that plaintiff was not aware of the danger of seizing the telephone wire does not operate, of itself, to charge defendant with responsibility for what occurred. Neither the distance of defendant's wires from the ground, nor the fact, if it is a fact, that one of them was defective

as to insulation, can be said to be the proximate cause of the injury.

The judgment is affirmed.

MOORE, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.