Badger vs. Janesville Cotton Mills.

BADGER, Appellant, vs. JANESVILLE COTTON MILLS, Respondent.

*March 17 — April 7, 1897.*

*Nonsuit: Master and servant: Negligence.*

1. The same rule applies to a motion for a nonsuit made at the close of all the evidence as to one moved for at the close of plaintiff's evidence,— that it should not be granted when the evidence on the part of the plaintiff alone, under the most favorable construction it would reasonably bear, would support a verdict in his favor.

2. Where, in an action against an employer for an injury to an employee, alleged to have been caused by the negligence of the defendant in furnishing to the plaintiff a defective ladder to use in the discharge of his duties, there was testimony on the part of the defense to show that the ladder was apparently sound, and had shortly before the accident safely carried the weight of two men, and in the opinion of an expert would carry 900 pounds of steady weight, *held*, that the reasonable probability was that the ladder broke from some cause other than plaintiff's weight, as testified to by him, and a nonsuit was properly granted.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Affirmed.*

This is an action for damages alleged to have been caused by actionable negligence on the part of the defendant, in that it failed to furnish plaintiff, one of its employees, suitable appliances with which to do his work. The allegations of the complaint are to the effect that plaintiff, on the 12th day of November, 1894, was in the employ of the defendant in a cotton mill operated by such defendant in the city

of Janesville, Wisconsin; that his duty was to repair and keep in order, among other things, the belts running to and operating the looms; that such belts ran from driving pulleys on shafts suspended on hangers from ten to twelve feet above the floor; that, in the performance of his duty, it became necessary from time to time for him to reach the shafts and pulleys by means of a ladder which defendant furnished for that purpose; that such ladder was unsafe, defective, and unsuitable for such use, so as to be liable to break from the weight of a person upon it; that on the day named, while in the performance of his duty, with due care, plaintiff ascended the ladder, to remove a belt which had become misplaced and wound up around the shaft, and that while so doing, by reason of the defective condition of the ladder, it broke, letting the plaintiff fall against the shaft and a pulley thereon, whereby his arm was caught in the shaft and pulley, and broken, torn, and mangled so that it became necessary to amputate the same at the shoulder. Damages were claimed in the sum of $20,000. Defendant answered, denying that the ladder was unsafe or unsuitable for the use of plaintiff in the performance of his work, and alleging that it was in every way safe and suitable for such purpose, and that plaintiff's injury was caused by his own negligence.

At the close of plaintiff's evidence, defendant's counsel moved the court for a nonsuit, which motion was denied. At the close of all the evidence, defendant's counsel moved the court to direct a verdict in defendant's favor, and thereupon the motion for the nonsuit previously made was granted, and plaintiff's counsel excepted thereto. Judgment was thereafter entered, dismissing the complaint, with costs, from which judgment this appeal was taken.

For the appellant there was a brief by *Fethers, Jeffris, Fifield & Mouat,* and oral argument by *O. H. Fethers* and *C. L. Fifield.* To the point that the nonsuit was improper,

because against positive evidence, and based upon that which was incompetent, they cited *Griffin v. Willow*, 43 Wis. 509, 512; *Oleson v. Tolford*, 37 Wis. 327, 330; *Kelly v. Fond du Lac*, 31 Wis. 179, 185; *Hoye v. C. & N. W. R. Co.* 62 Wis. 666, 671; *O'Brien v. C. & N. W. R. Co.* 92 Wis. 340, 343; *Leiser v. Kieckhefer, ante,* p. 4.

For the respondent there was a brief by *Sutherland & Nolan*, and oral argument by *G. G. Sutherland*.

MARSHALL, J. Notwithstanding the nonsuit was granted at the close of defendant's evidence instead of when the motion was made, at the close of plaintiff's evidence, the rule still applies that it was justifiable only on the ground that the latter evidence, under the most favorable construction it would reasonably bear, including all reasonable inferences therefrom, would support a verdict in plaintiff's favor. Hence the initial question is, Looking only to plaintiff's evidence in the most favorable light, would it support a verdict in his favor? And that turns mainly on whether there was any evidence to establish the contention that defendant failed to perform its duty in respect to furnishing a reasonably safe ladder for plaintiff's use. If not, the question whether plaintiff's evidence showed that he was guilty of contributory negligence, as a matter of law, need not be considered.

The alleged defective ladder was about twelve feet long, with hooks at the top ends of the side pieces, used to hook over the overhead shafts. While plaintiff was endeavoring to fix a belt that reached from a driving pulley to a loom, such pulley being on a shaft about two feet from the wall and twelve feet above the floor, the belt having been removed from the pulley and lying over the shaft which was revolving, and taken apart at the point where plaintiff was working at it, it was snatched out of his hand by being in some manner caught by the shaft, and wound up around such shaft near the pulley and a hanger by which the shaft

was supported. Plaintiff took the ladder in question, and placed it in position against the wall, in order to go up and remove the belt from the shaft. The hooks were turned in so as to keep the top of the ladder about four inches away from the wall. The foot was out about three feet and a half. Plaintiff ascended to the fourth or fifth round, leaned back with his right hand hold of the ladder, and reached up with his left hand, and endeavored to remove the belt from the shaft, or away from the hanger. Finding he could not do anything further than to shove the belt away from the hanger, he started to descend, when in some way his left arm was caught and wound around the shaft, and torn off, and he was otherwise injured. The ladder was broken at the upper round on the left side, that being about sixteen inches from the top. Plaintiff testified that the breaking of the ladder caused him to make such movements as to result in his arm being caught by the shaft. On the trial the ladder was produced in court, and plaintiff testified in regard to it in substance as follows: "I had worked over a year, and always used this ladder. I used it frequently and made no complaint. It was all right so far as I knew. Thomas Cherry was associated with me as a loom fixer. We had both been on the ladder at once a short time previous. The hooks were then over a shaft, and the ladder had a slant of about eighteen inches. I have never heard any complaint about the ladder. I cannot see any rot in any part of the ladder. The grain seems to be a very poor grain. The ladder was about as far from the wall as now. It is not very straight grained." Thomas Cherry testified respecting the ladder, in substance, that he and plaintiff had both been on the ladder at the same time. There was other testimony to the effect that a ladder circumstanced as this one was at the time of the accident would be subjected to very little lateral pressure at the point where it broke; that the ladder was made of hemlock, which was rather brittle;

that hemlock was rather poor wood for such purposes. F. H. Kemp testified as an expert that the ladder would carry two men standing quietly on it; that he would trust two men on it; that, with the base of the ladder three and one-half feet from the wall, it would carry 900 pounds steady load; that there were some symptoms of dead rot where the break occurred,— very slight, not enough to be observed except by a person of large experience; that it was not what you would call rot. There was other evidence given by plaintiff's witnesses bearing on the question, but none of which varies the foregoing. The ladder was made an exhibit, and sent to this court, with other exhibits in the case. An inspection of it fails to disclose any evidence of defects. The side pieces appear to be of good sound wood.

From the foregoing, which fairly presents the plaintiff's case, in our judgment, we are unable to say that it would support a verdict in his favor, on the charge that the ladder was not reasonably suitable for his use. The evidence is all the other way, and may properly be said to be sufficiently strong and convincing to a person of ordinary understanding to produce conviction that the ladder was broken in some other way than from plaintiff's weight upon it. Though he says it did so break, the probabilities are all the other way; and they are so strong as to be inconsistent with any reasonable theory other than that he was mistaken. The jury would not be warranted in finding the existence of a fact on the positive testimony of a witness, which is contrary to conceded facts or matters of common knowledge, or to all reasonable probabilities. *Payne v. C., R. I. & P. R. Co.* 39 Iowa, 523; *Thompson v. Pioneer-Press Co.* 37 Minn. 285. That the lateral strain on a ladder circumstanced as this one was, eighteen inches from the top, caused by the weight of a man on the fourth or fifth round, is very small, is a matter of common knowledge. That the breaking of a ladder strong enough to support two or three times plaintiff's weight, by

the use the one in question was designed to serve, was an event not within the range of reasonable probabilities, cannot be questioned. It needs no evidence from the mouths of witnesses to establish it, and testimony to the contrary would not change it. The conclusion of the trial court that the evidence produced by plaintiff was entirely insufficient to support a verdict was clearly right. Therefore the nonsuit was properly granted.

*By the Court.*— The judgment of the circuit court is affirmed.